D. E. LYNCH, JR., Plaintiff-Appellant, *v.* JOHN C. DEVINE *et al.*, Defendants-Appellees.

Third District   No. 76-124

Opinion filed January 31, 1977.

744

Phillips, Phebus, Tummelson & Bryan, of Urbana, for appellant.

William J. Scott, Attorney General, of Chicago (Patricia J. Rosen and Robert G. Eppstein, Assistant Attorneys General, of counsel), for appellees.

Mr. JUSTICE ALLOY delivered the opinion of the court:

Plaintiff D. E. Lynch, Jr., appeals from orders of the Circuit Court of Iroquois County granting motions to dismiss the complaint filed by plaintiff in this cause. The action was instituted against individual members of the Iroquois County Board of Supervisors, the County Superintendent of Highways, and Langhorne Bond, Secretary of the Illinois Department of Transportation. In the action filed by plaintiff, he sought to enjoin defendants from letting certain types of highway construction contracts which were not in compliance with certain provisions of the Prevailing Wage Act (Ill. Rev. Stat. 1975, ch. 48, par. 39s—1 et seq.). Plaintiff also sought $100,000 in damages against county officials.

Secretary of Transportation Bond appeared and filed a motion to dismiss alleging that he was not a necessary or proper party defendant to the action and that he was immune from the suit in his capacity as a government official. The remaining defendants, hereinafter referred to as "the County," also filed a motion to dismiss generally alleging plaintiff's lack of standing to maintain the action. The trial court granted both motions.

■■ The terms of the Prevailing Wage Act provide that public construction contracts must require the contractors to pay their workmen the prevailing hourly wage in that locality for the type of work performed. (Ill. Rev. Stat. 1975, ch. 48, pars. 39s—3, 39s—4.) Excluded from the coverage of the Act, however, is maintenance work, defined as "repair of existing facilities when the size, type or extent of such existing facilities is not thereby changed or increased" (Ill. Rev. Stat. 1975, ch. 48, pars. 39s—2, 39s—3).

The specific type of construction to which reference is made is known as "Class A-1 Bituminous Surface Treatment" according to State highway specifications. Briefly, it consists of alternate applications of liquid binder and a stone aggregate material to the surface of the road.

The contentions and arguments concern whether this bituminous treatment is properly called "construction" or "maintenance work." Defendants have considered it maintenance work and have let contracts on that basis, without requiring payment of the prevailing wage to workmen. Plaintiff Lynch contends that the treatment is construction work and that contracts let for such work must require the contractor to pay the prevailing wage rate.

In an attempt to show his standing to bring this question before the courts, Lynch alleges that he is a contractor who has done highway construction work in Iroquois County and elsewhere in the State over the

past few years and that he has previously performed bituminous treatment work for the State. Plaintiff further alleges that he is a contractor "qualified" with the State of Illinois and that the County's action in designating the treatment as "maintenance" makes it impossible for him and other "qualified" contractors to compete effectively with "unqualified" contractors in bidding for road construction projects involving the bituminous treatment. Plaintiff also complains and asserts that this situation has cost him $100,000 in lost profits from contracts he could not obtain, and he asks that amount in damages from the County.

What plaintiff is requesting is that the court find that the A-1 bituminous treatment is "construction" work and not "maintenance" and, also, he seeks an injunction against the County to prevent the letting of further contracts for such work without requiring payment of the prevailing wage rates. An injunction is also sought against Secretary of Transportation Bond to prevent his approval of the State motor fuel tax funds for payment of such contracts until there is compliance with the provision relating to prevailing wages.

In addition to the assertion of his status as a contractor, Lynch also alleges his position as a taxpayer and resident of Iroquois County and of the State of Illinois and contends that this gives him standing to challenge the appropriation of State and local funds for an alleged violation of the Prevailing Wage Act.

■■ On the basis of the issues framed by the parties, the appeal is concerned primarily with the question of whether plaintiff has standing, either as a citizen, a taxpayer, or a contractor, to maintain the cause of action. In the resolution of this problem we accept as facts all allegations well pleaded and all reasonable inferences therefrom. *Suvada v. White Motor Co.* (1965), 32 Ill. 2d 612, 613, 210 N.E.2d 182; *Barco Manufacturing Co. v. Wright* (1956), 10 Ill. 2d 157, 158, 139 N.E.2d 227; *Palier v. Dreis & Krump Mfg. Co.* (1st Dist. 1967), 81 Ill. App. 2d 1, 5, 225 N.E.2d 67; *Miles Homes, Inc. v. Mintjal* (4th Dist. 1974), 17 Ill. App. 3d 642, 645, 307 N.E.2d 724.

The question of standing is perhaps most widely associated with decisions of the United States Supreme Court concerning Federal court jurisdiction and is an issue that frequently confronts State courts. While the jurisdictional problems of article III of the United States Constitution provide the foundation for most of the Supreme Court decisions, necessarily, the same problems are required to be dealt with on the State level (see, *e.g.*, *Cusack v. Howlett* (1969), 44 Ill. 2d 233, 236, 254 N.E.2d 506). There is, however, still a great deal of guidance which can be noted from the United States Supreme Court cases.

The doctrine of standing, simply stated, requires that a party seeking relief from the courts must allege some injury in fact to some substantive,

legally-protected interest of his, which is a right or interest either recognized by common law or created by statute. (See 59 Am. Jur. 2d *Parties* §§26-29 (1971).) The doctrine is used to insure that the courts are available to decide actual, specific controversies between the parties and are not overwhelmed in the mire of abstract questions, moot issues, or cases brought on behalf of other parties who do not desire judicial aid. *Flast v. Cohen* (1968), 392 U.S. 83, 99-100, 20 L. Ed. 2d 947, 961-62, 88 S. Ct. 1942.

■■ Where the suit alleges injury due to violation of a statute, the doctrine of standing requires that the plaintiff be one of the class designed to be protected by the statute, or for whose benefit the statute was enacted, and to whom a duty of compliance is owed. (73 Am. Jur. 2d *Statutes* §433 (1974); see *Association of Data Processing Service Organizations, Inc. v. Camp* (1970), 397 U.S. 150, 153-54, 25 L. Ed. 2d 184, 188, 90 S. Ct. 827; *Boyer v. Atchison, Topeka & Santa Fe Ry. Co.* (1st Dist. 1962), 34 Ill. App. 2d 330, 335, 181 N.E.2d 372.) The object of the statute, the nature of the duty imposed by it, and the benefits resulting from its performance dictate what persons are entitled to sue thereunder. See 73 Am. Jur. 2d *Statutes* §433 (1974).

■■ Plaintiff bases his standing to bring the instant action in part on his status as a contractor who has performed and can perform the work involved in the bituminous treatment. It does not appear that Lynch, as a contractor, is even arguably within the zone of interest sought to be protected by the enactment of the Prevailing Wage Act. Plaintiff's complaint refers to "qualified" and "unqualified" contractors without further defining these classes. He alleges that his ability to bid competitively for bituminous treatment contracts has been injured by the County's designation of the work as "maintenance." He does not allege any other facts supporting the claim of competitive injury and without such supporting allegations of fact, the conclusions as set forth in the complaint, do not support a cause of action. *Van Dekerkhov v. City of Herrin* (1972), 51 Ill. 2d 374, 377-79, 282 N.E.2d 723; *Gouker v. Board of Supervisors* (1967), 37 Ill. 2d 473, 479, 228 N.E.2d 881; Ill. Rev. Stat. 1975, ch. 110, par. 31.

■■ Even if sufficient averments of fact were made, we cannot agree that the contractor, as a contractor, has a cause of action to enforce the statute on the ground that he was competitively injured. The legislature clearly has imposed no duty under the statute toward contractors which the County could be said to have breached by its action. The plaintiff, as a contractor, is thus clearly not one for whose benefit the statute was enacted.

■■ Plaintiff also asserts standing on the basis of his status either as a citizen and resident of the County and State or as a taxpayer thereof. It has long been established in Illinois that a taxpayer may sue in equity to

enjoin the illegal appropriation of public revenues. (*Barco Manufacturing Co. v. Wright* (1956), 10 Ill. 2d 157, 160, 139 N.E.2d 227; *Droste v. Kerner* (1966), 34 Ill. 2d 495, 505, 217 N.E.2d 73; *Krebs v. Thompson* (1944), 387 Ill. 471, 473, 56 N.E.2d 761; *Illinois Broadcasting Co. v. City of Decatur* (4th Dist. 1968), 96 Ill. App. 2d 454, 459, 238 N.E.2d 261.) The right of the taxpayer is founded on the proposition of his equitable ownership of the funds and the fact of his liability to replenish the treasury in the event of misappropriation. His complaint must establish this situation, otherwise it is fatally defective. (*Price v. City of Mattoon* (1936), 364 Ill. 512, 514, 4 N.E.2d 850. See also *Barco Manufacturing Co. v. Wright* (1956), 10 Ill. 2d 157, 160, and *Daly v. County of Madison* (1941), 378 Ill. 357, 364, 38 N.E.2d 160.) In simple terms, therefore, the taxpayer must allege that the acts complained of would result in financial loss or other injury to himself or the taxpayers as a whole, through increased taxation, or in some financial injury or other harm to the governmental body involved. (74 Am. Jur. 2d *Taxpayers Actions* §4, at 189-90 (1974).) Thus, even if a particular act is illegal, injunctive relief is not justified unless the act substantially and imminently threatens to waste or injure public funds, property or interest. 74 Am. Jur. 2d *Taxpayers Actions* §12 (1974).

This is an unusual case to be filed as a taxpayer's suit. There are no allegations that the public revenues are diminished by the letting of contracts for bituminous treatment under the alleged misclassification. In fact, plaintiff seeks to require the defendants to insure that the prevailing wage rate is paid on current and future projects. The implication of the complaint, including the allegations of inability to bid competitively, is that the County is actually *saving* money by allowing the contractors to pay their workers at less than the prevailing wage rate. It is, therefore, apparent that the complaint sets forth a situation where the acts of the defendants have not created a need for replenishment of the State and County revenues. There is no apparent financial threat to plaintiff, his fellow taxpayers, or the governmental bodies involved, and the courts have looked with disfavor on taxpayer's suits, the success of which would tend to increase public expenditures rather than decrease them. *Daly v. County of Madison* (1941), 378 Ill. 357, 371-74, 38 N.E.2d 160; *People ex rel. Hamer v. Board of Education* (2d Dist. 1974), 22 Ill. App. 3d 130, 134, 316 N.E.2d 820.

■■ We recognize that lack of pecuniary injury to the taxpayer may not bar the suit if the taxpayer had standing to challenge an injury to the public interest not necessarily measurable in monetary loss. (74 Am. Jur. 2d *Taxpayers Actions* §12 (1974).) The only public injury alleged to result from defendants' classification of the bituminous treatment is that the citizens are deprived of having work performed without the likelihood of interruption or delays, by workmen of average skill. This apparent purpose of the Prevailing Wage Act is taken from *Bradley v. Casey*

(1953), 415 Ill. 576, 586, 114 N.E.2d 681. We interpret this purpose to mean that payment of the prevailing wage tends to lessen the possibility of strikes and to increase the quality of the workers, certainly laudable goals. Assuming, however, that the plaintiff as a taxpayer does have standing based on his interest in the expenditure of public revenues in accordance with the public purpose of the Prevailing Wage Act, there has been no showing of a concrete injury in fact, either occurring or imminent. The law is well settled that for equitable relief one must be able to show an actual, substantial injury and not one which is technical, inconsequential, or speculative. "Relief will not be granted to allay unfounded fears or misapprehensions." (*Barco Manufacturing Co. v. Wright* (1956), 10 Ill. 2d 157, 166.) There are no allegations in the complaint that defendants' conduct has in fact raised the possibility of a strike or that it has resulted in poor quality work, or that there is any other injury or imminent danger to substantial public interest.

■■ Nor is there any allegation which would justify the conclusion that public interest is such as would allow us to presume injury from the fact of the so-called illegal acts, arising from a conflict of interest. (74 Am. Jur. 2d *Taxpayers Actions* §4 at 190 (1974).) The United States Supreme Court, in two recent cases amplifying its views on the question of standing, has made clear the need in Federal court for a complaint to allege some substantial injury in fact, either sustained already or immediately threatened. (*United States v. Richardson* (1974), 418 U.S. 166, 177, 41 L. Ed. 2d 678, 688, 94 S. Ct. 2940; *Schlesinger v. Reservists Committee to Stop the War* (1974), 418 U.S. 208, 220-221, 41 L. Ed. 2d 706, 718, 94 S. Ct. 2925.) We believe that these views are equally applicable to our requirements for standing in Illinois courts, other than where the acts are contrary to a statute or established case law.

The contention by plaintiff that he had standing merely as a citizen and resident of the County and State is similarly disposed of. First, it is the general rule that a private citizen suing as such for the redress of a public injury, must at least show an actual or threatened injury to that public interest he seeks to protect. An older rule had been to the effect that the citizen must himself suffer injury greater in kind or degree from that suffered by other members of the populace in general. (*Price v. City of Mattoon* (1936), 364 Ill. 512, 515, 4 N.E.2d 850; *Droste v. Kerner* (1966), 34 Ill. 2d 495, 504, 217 N.E.2d 73.) This strict rule, however, has been eased in more recent decisions, such as *Paepcke v. Public Building Com.* (1970), 46 Ill. 2d 330, 341, 263 N.E.2d 11, where the court reconsidered *Droste* and held that a citizen could sue to enforce a public trust without alleging damage to his own private property. See *United States v. Students Challenging Regulatory Agency Procedures* (1973), 412 U.S. 669, 687-688, 37 L. Ed. 2d 254, 270, 93 S. Ct. 2405. See also *Schlesinger v. Reservists Committee to Stop the War* (1974), 418 U.S. 208, 227, 41 L. Ed. 2d 706,

722, 94 S. Ct. 2925, for United States Supreme Court divergent views on the propriety of citizen suits without allegations of special harm.

■■ In any event plaintiff cannot escape the need for alleging an injury in fact, judicially cognizable, to an interest he puts forth in his role as a citizen-resident. As we have already observed, no such allegation is made.

We conclude, therefore, that plaintiff has not alleged a substantial injury, actual or imminent, to any recognized interest in any of his capacities, whether as contractor, taxpayer, or citizen-resident. For that reason we conclude that he had no standing to maintain the action as set forth in the complaint.

Whether or not the "Class A-1 Bituminous Surface Treatment" can be considered construction work or maintenance work appears to be a debatable question, and one that perhaps deserves some consideration by the courts. The question, however, must be raised by a proper party, someone with more at stake than a contractor, who incidentally may be injured by the county's interpretation or a taxpayer who vaguely foresees a possible strike or poor quality workmanship.

■■ We make brief observations in answer to another contention raised by the parties, as to the propriety of having defendant Langhorne Bond, Secretary of the Department of Transportation, as a party to the action. The complaint alleges that Bond as the Department of Transportation Secretary, is concerned with allocating motor fuel tax funds to highway construction projects in various counties including bituminous treatment projects. The Department must actually approve projects where motor fuel tax funds are used. (Ill. Rev. Stat. 1975, ch. 121, pars. 5—402, 5—403.) In such an important role, Secretary Bond is a proper party. He need not be a necessary party or interested in all the relief requested. *City of Nokomis v. Sullivan* (1958), 14 Ill. 2d 417, 420, 153 N.E.2d 48; Ill. Rev. Stat. 1975, ch. 110, par. 24.

■■■ Defendant Bond, also, is not immune from suit by reason of sovereign immunity under "An Act in relation to immunity for the State of Illinois" (Ill. Rev. Stat. 1975, ch. 127, par. 801), nor is suit required to be filed in the Court of Claims of this State, since the $100,000 in damages is sought against the "County" and not as against Bond. Public officials may, in a proper action, be sued to enjoin alleged violations of the law. *County of Cook v. Ogilvie* (1972), 50 Ill. 2d 379, 383, 280 N.E.2d 224.

We conclude, therefore, that since plaintiff lacked standing to maintain the action against either Bond or the "County", the order of the Iroquois County Circuit Court granting the motions to dismiss the complaint in the instant case was proper and is affirmed.

Affirmed.

STENGEL, P. J., and STOUDER, J., concur.