NOTICE

Decision filed 04/02/10. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

NO. 5-09-0079

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | |
|---|---|
| P&S GRAIN, LLC, an Illinois Limited Liability Company, and V.W. BOWMAN OIL COMPANY, a Missouri Corporation, | ) Appeal from the<br>) Circuit Court of<br>) Williamson County. |
| Plaintiffs-Appellants, | ) |
| v. | ) No. 08-CH-100 |
| THE COUNTY OF WILLIAMSON, ILLINOIS, an Illinois Unit of Local Government, BRIAN A. HAMER, Director, Illinois Department of Revenue, an Agency of State Government, and THE BOARDS OF EDUCATION OF JOHNSTON CITY, MARION, CRAB ORCHARD, HERRIN, and CARTERVILLE SCHOOL DISTRICTS, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) Honorable |
| Defendants-Appellees. | ) John Speroni,<br>) Judge, presiding. |

_____

JUSTICE STEWART delivered the opinion of the court:

The plaintiffs, P&S Grain, LLC (P&S), and V.W. Bowman Oil Company (Bowman), filed a complaint seeking a declaratory judgment, injunctive relief, and a temporary restraining order. In their complaint, they challenge (1) the constitutionality of Public Act 95-0675 (Pub. Act 95-0675, eff. October 11, 2007), which, *inter alia*, added section 5-1006.7 to the Counties Code (55 ILCS 5/5-1006.7 (West Supp. 2007)) (section 5-1006.7 is entitled the County School Facility Occupation Tax Law but is hereinafter referred to as the School Facility Tax Law) and allows county governments to impose a 1% sales tax for school facility use, (2) the validity of two Williamson County ordinances that authorized the imposition of the 1% sales tax in Williamson County, and (3) the validity of the filing certificate issued by the Illinois Department of Revenue in regard to one of the Williamson

1

County ordinances. The trial court determined that the plaintiffs did not have standing to pursue this action, and the court granted the defendants' motion to dismiss. The sole issue we resolve is whether the plaintiffs have standing to challenge the sales tax. We find that both plaintiffs have standing, we reverse the order of the trial court dismissing the plaintiffs' complaint, and we remand this case for further proceedings.

BACKGROUND

On October 11, 2007, the Illinois legislature enacted Public Act 95-0675, which, *inter alia*, added the School Facility Tax Law and amended section 15 of the Local Government Debt Reform Act. 55 ILCS 5/5-1006.7 (West Supp. 2007); 30 ILCS 350/15 (West Supp. 2007). In part, the School Facility Tax Law allows Illinois counties to impose a countywide retailers' occupation tax and a service occupation tax (retail sales tax) at a rate of 1%, to be used exclusively for school facility purposes. 55 ILCS 5/5-1006.7 (West Supp. 2007).

In November 2007, pursuant to the School Facility Tax Law, the board of education for each school district in Williamson County–Johnston City, Marion, Crab Orchard, Herrin, and Carterville (hereinafter the school districts)–passed a similar resolution requesting that Williamson County submit to the voters the question of imposing the 1% sales tax for school facility purposes. On November 28, 2007, the Williamson County Board of Commissioners (the Williamson County Board) passed resolution number 07-11-28-65, which authorized the submission of the following proposition to be placed on the ballot for the February 5, 2008, general primary election:

"Shall the County of Williamson, Illinois, be authorized to impose a retailers occupation tax and a service occupation tax (commonly referred to as a 'sales tax') at a rate of 1% to be used exclusively for school facility purposes?"

At the general primary election held on February 5, 2008, the sales tax issue was submitted to the voters of Williamson County. On February 19, 2008, Saundra Jent, the Williamson

2

County clerk, certified, in an "Abstract of Votes," that the voters of Williamson County had voted "yes" to the proposition submitted, by a margin of 9,078 to 8,342.

On February 29, 2008, the Williamson County Board passed ordinance number 08-02-29-02, which accepted the majority vote in favor of the imposition of the 1% school facility tax and directed the Williamson County clerk to transmit a certified copy of the ordinance to the Department of Revenue "for administration and enforcement." On March 28, 2008, counsel for the Department of Revenue sent a letter to the Williamson County clerk acknowledging its receipt of the copy of the ordinance and suggesting that the ordinance should be amended to show an effective date of July 1, 2008, which would coincide with the date the Department of Revenue would begin its administration and enforcement of the ordinance. On April 8, 2008, the Williamson County Board passed ordinance number 08-04-08-03 to impose the 1% school facility retail sales taxes in Williamson County, effective July 1, 2008.

P&S filed the original complaint against Williamson County, Illinois, on May 20, 2008. On June 17, 2008, P&S sent a document entitled "Supreme Court Rule 19(a) Notice" (210 Ill. 2d R. 19(a)) to Charles Garnati, Williamson County State's Attorney, and Steve Green, the corporate counsel for the City of Marion, notifying them "that the within cause of action challenges the constitutionality of Public Act 95-0675 as applied to Plaintiff." On September 22, 2008, the trial court allowed Bowman to join the action as a plaintiff. On September 26, 2008, the plaintiffs filed a seven-count amended complaint, adding the Department of Revenue as a defendant as the "agent that collects and distributes" the 1% retail sales taxes.

In the amended complaint, the plaintiffs alleged that P&S is an Illinois limited liability company with its primary office located in Marion, Illinois, that P&S is in the business of selling agricultural products to customers located primarily in Williamson County, and that

3

its sales are subject to retail sales taxes. The plaintiffs alleged that Bowman is a Missouri corporation, authorized to do business in Illinois, and is in the business of selling petroleum products to customers in Williamson County. The plaintiffs alleged that Bowman was also subject to retail sales taxes. They alleged that they were taxpayers and tax collectors and that they would suffer irreparable harm if the 1% retail sales taxes were allowed to be collected and enforced.

The plaintiffs alleged that Williamson County is a "non-home[-]rule unit of local government" and that the City of Marion, Illinois (the City), "is a home[-]rule municipality located within Williamson County, Illinois." They alleged that the five school districts located in Williamson County had requested the county to place the question of imposing a "County School Facility Occupations Tax" pursuant to the School Facility Tax Law (55 ILCS 5/5-1006.7(c) (West Supp. 2007)) on the February 5, 2008, ballot. The School Facility Tax Law provides, in pertinent part, as follows:

> "(c) The tax under this Section may not be imposed until, by ordinance or resolution of the county board, the question of imposing the tax has been submitted to the electors of the county at a regular election and approved by a majority of the electors voting on the question. Upon a resolution by the county board or a resolution by school district boards that represent at least 51% of the student enrollment within the county, the county board must certify the question to the proper election authority in accordance with the Election Code.
>
> The election authority must submit the question in substantially the following form:
>
>> Shall (name of county) be authorized to impose a retailers' occupation tax and a service occupation tax (commonly referred to as a 'sales tax') at a rate of (insert rate) to be used exclusively for school facility purposes?

4

The election authority must record the votes as 'Yes' or 'No'.

If a majority of the electors voting on the question vote in the affirmative, then the county may, thereafter, impose the tax."  55 ILCS 5/5-1006.7(c) (West Supp. 2007).

The plaintiffs alleged that the question of the imposition of the tax was ultimately voted upon and approved by the voters of Williamson County and that the "Sales Tax purportedly enacted by Williamson County will result in a *de facto* increase in sales taxes throughout the City."  The plaintiffs alleged that the City, through its home-rule powers, had imposed certain taxes, that the City had the "sole and exclusive authority to impose sales taxes within the City," and that neither the School Facility Tax Law nor any other legislative act preempted the City's home-rule powers with regard to the imposition of retail sales taxes.

Specifically, the plaintiffs alleged in count I, directed at Williamson County, that the School Facility Tax Law, as applied within the City, was invalid and in violation of article VII, section 6, of the Illinois Constitution (Ill. Const. 1970, art. VII, §6).  In counts II and III, which were directed at Williamson County, they alleged that Williamson County ordinance numbers 08-02-29-02 and 08-04-08-03 were each "void *ab initio*."  In count IV, which was also directed at Williamson County, they alleged that the filing certificate issued by the Department of Revenue was "without legal basis" and that the court should declare it void. In counts V, VI, and VII, which were directed at both Williamson County and the Department of Revenue, they sought injunctive relief against the collection of any tax under the School Facility Tax Law, a declaratory judgment that the School Facility Tax Law and the ordinances authorizing the tax were "void and of no legal force and effect," and a temporary restraining order to prevent the Department of Revenue from collecting "the disputed school sales tax sooner than January 1, 2009, if at all."

On November 3, 2008, the school districts filed a petition to intervene as of right, and

5

on November 12, 2008, the trial court granted the plaintiffs' motion for an extension of time to respond to that petition. Also on that date, the court found that the plaintiffs had a "reasonable ground for filing" their cause of action and ordered the plaintiffs' amended complaint to be filed and summons to issue.

On November 13, 2008, the plaintiffs refiled the same amended complaint, the details of which we have set forth above, against Williamson County and the Department of Revenue. On November 19, 2008, the Department of Revenue was served with a summons. On December 5, 2008, the trial court granted the school districts' petitions to intervene, and on the same date, Williamson County and the school districts filed motions to dismiss, challenging several aspects of the action, including the plaintiffs' standing to challenge the statute and ordinances at issue.

On December 17, 2008, the court conducted a hearing on the motions to dismiss. The defendants argued that the plaintiffs failed to allege any actionable injury as a result of the tax because, although they are required to pay the tax, they are allowed to pass the entire tax on to the consumers. The defendants also argued that the plaintiffs, a limited liability company and a Missouri corporation, did not meet the criteria for challenging the tax as set forth in section 11-301 of the Code of Civil Procedure (the Code) (735 ILCS 5/11-301 (West 2008)). That section provides, "An action to restrain and enjoin the disbursement of public funds by any officer or officers of the State government may be maintained either by the Attorney General or by *any citizen and taxpayer of the State*." (Emphasis added.) 735 ILCS 5/11-301 (West 2008). The defendants argued that Bowman, a Missouri corporation, and P&S, a limited liability company, did not qualify as citizens pursuant to the ruling in *Charles Friend & Co. v. Goldsmith & Seidel Co.*, 307 Ill. 45, 50, 138 N.E. 185, 187 (1923) ("A corporation is not a citizen of any State or country"). The defendants asserted that only individual taxpayers living in Williamson County are citizens who would have standing to

6

challenge the tax under section 11-301 of the Code.

The plaintiffs argued that they had standing to request injunctive relief on the ground that, under section 11-301, they qualified both as citizens and as taxpayers. They argued that, under the Business Corporation Act of 1983 (805 ILCS 5/1.01 *et seq.* (West 2008)), they had the right to sue and be sued in their corporate name (805 ILCS 5/3.10 (West 2008)). They argued that they had standing as taxpayers because, as retailers, they were required to pay the 1% school facility tax. They argued that they also had standing as tax collectors because they were required to act as agents of the state in collecting the tax from their customers and submitting the collected tax to the Department of Revenue. The plaintiffs maintained that they suffered an actionable injury sufficient to give them standing whether or not they passed the tax on to their customers and regardless of any reimbursement they might receive for collecting the tax.

On January 29, 2009, the court entered an order dismissing with prejudice the amended complaint and ruling, in pertinent part, as follows:

"Plaintiffs, P&S *** and *** Bowman ***, claim standing both as taxpayers and [as] tax collectors. The Plaintiffs do not have standing as taxpayers. 55 ILCS 5/5-1006.7(a) and (b) specifically allow Plaintiffs to reimburse themselves for their sales tax liability by charging the sales taxes to their customers. In other words, the sales taxes are passed along to Plaintiffs' customers. In addition, the sales taxes apply only to goods and services subject to the sales taxes which are purchased in Williamson County. The sales taxes do not apply statewide or even in adjacent counties. The Plaintiffs, and anyone else for that matter, can avoid the sales taxes entirely by choosing not to purchase goods and services subject to the sales taxes in Williamson County.

The Plaintiffs also do not have standing as tax collectors. As the Plaintiffs

7

concede[,] they are entitled to reimbursement for their expenses incurred in keeping records, preparing and filing returns, remitting the tax, [and] supplying data to the Department [of Revenue], if requested[,] and for acting as collectors of the tax.

\*\*\*

After considering the allegations of the Amended Complaint, the Motions to Dismiss, Plaintiffs' Memorandum Of Law In Opposition, the arguments of counsel[,] and the applicable law, the Court finds that the Plaintiffs \*\*\* do not have standing to bring this lawsuit.  Accordingly, the Court finds that the Motions to Dismiss \*\*\* should be granted pursuant to 735 ILCS 5/2-619(a)(9), and this case should be dismissed, with prejudice."

This appeal followed.

## ANALYSIS

Because the trial court dismissed the plaintiffs' amended complaint for lack of standing, our first task is to clearly delineate what is meant by standing and why it is a necessary element of every cause of action.  The concept of standing is related to the concepts of mootness, ripeness, and justiciability, all of which allow courts to limit their caseload to disputes which are truly adversarial and for which a judicial decision will resolve the issues.  *Greer v. Illinois Housing Development Authority*, 122 Ill. 2d 462, 488, 524 N.E.2d 561, 572 (1988).  The primary criterion for standing is that a plaintiff must have suffered an "injury in fact" for which a judicial decision may provide a redress or remedy.  *Greer*, 122 Ill. 2d at 488, 524 N.E.2d at 572-73.  The " 'central principle' " of standing is " 'very simple: *One who is adversely affected in fact by governmental action has standing to challenge its legality, and one who is not adversely affected in fact lacks standing.*' " (Emphasis in original.)  *Greer*, 122 Ill. 2d at 488, 524 N.E.2d at 573 (quoting 4 K. Davis, Administrative Law Treatise §24:2, at 212 (2d ed. 1983)).

The actual or threatened injury claimed by a plaintiff must be distinct and palpable, fairly traceable to the defendant's actions, and substantially likely to be prevented or redressed by the grant of the requested relief. *Greer*, 122 Ill. 2d at 492-93, 524 N.E.2d at 575. "In the context of an action for declaratory relief, there must be an actual controversy between adverse parties, with the party requesting the declaration possessing some personal claim, status, or right which is capable of being affected by the grant of such relief." *Greer*, 122 Ill. 2d at 493, 524 N.E.2d at 575.

For there to be an "actual" controversy, there must be "a showing that the underlying facts and issues" are not moot or premature because courts are not to render advisory opinions or merely provide legal advice about possible future events. *Messenger v. Edgar*, 157 Ill. 2d 162, 170, 623 N.E.2d 310, 314 (1993). "The requirement of an actual controversy is meant only to distinguish justiciable issues from abstract or hypothetical disputes and is not intended to prevent the resolution of concrete disputes in which a definitive and immediate determination of the rights of the parties is possible." *Messenger*, 157 Ill. 2d at 170-71, 623 N.E.2d at 314. For the plaintiff to be "interested" in the controversy, there must be more than mere curiosity or concern; "rather, the party requesting the declaration must possess a personal claim, status, or right that is capable of being affected by the grant of such relief." *Messenger*, 157 Ill. 2d at 171, 623 N.E.2d at 314.

"Since standing is a component of justiciability, it must be defined on a case-by-case basis." *Messenger*, 157 Ill. 2d at 171, 623 N.E.2d at 314. Whether a party has standing differs depending upon the issues involved and the nature of the relief sought. *Martini v. Netsch*, 272 Ill. App. 3d 693, 695, 650 N.E.2d 668, 670 (1995). "Whether the plaintiff has standing to sue is to be determined from the allegations contained in the complaint." *Martini*, 272 Ill. App. 3d at 695, 650 N.E.2d at 670.

In our case, the trial court dismissed the plaintiffs' complaint upon the defendants'

9

motion to dismiss filed pursuant to section 2-619 of the Code (735 ILCS 5/2-619 (West 2008)), which allows claims to be dismissed based upon certain defects or defenses (*Illinois Graphics Co. v. Nickum*, 159 Ill. 2d 469, 485-86, 639 N.E.2d 1282, 1290 (1994)). Specifically, a claim may be dismissed when it is "barred by other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2-619(a)(9) (West 2008). A lack of standing qualifies as such an affirmative matter. *Wexler v. Wirtz Corp.*, 211 Ill. 2d 18, 22, 809 N.E.2d 1240, 1243 (2004). There is no requirement for a plaintiff to assert facts to show that he has standing; rather, it is the burden of the defendant to plead and prove a lack of standing. *Wexler*, 211 Ill. 2d at 22, 809 N.E.2d at 1243. "When ruling on a section 2-619 argument, a court must accept as true all well-pled facts in the plaintiff's complaint and all inferences that reasonably can be drawn in the plaintiff's favor." *Crusius v. Illinois Gaming Board*, 348 Ill. App. 3d 44, 48, 807 N.E.2d 1207, 1212 (2004), *aff'd*, 216 Ill. 2d 315, 837 N.E.2d 88 (2005). A motion to dismiss filed pursuant to section 2-619 that challenges a plaintiff's standing presents a question of law, and our review of the trial court's ruling is *de novo*. *Wexler*, 211 Ill. 2d at 23, 809 N.E.2d at 1243.

With these rules in mind, we first consider whether the plaintiffs, as taxpayers, meet the common law requirements for standing to challenge the imposition of the 1% school facilities retail sales tax in Williamson County. The basic premises of their cause of action are (1) that Williamson County's imposition of the school facility tax conflicts with and unconstitutionally violates the City's home-rule status and its imposition of citywide taxes and (2) that Williamson County did not correctly follow the necessary procedures for implementing the tax. Without commenting upon the viability of their claim, we find that the plaintiffs, as corporate entities subject to both the City's taxes and Williamson County's school facility tax, are adversely affected by those taxes. Since both plaintiffs, as retailers, are subject to the tax they are challenging, they have a real interest in the outcome of the

lawsuit, which is a truly adversarial controversy. See *Crusius*, 348 Ill. App. 3d at 48, 807 N.E.2d at 1212 ("The doctrine of standing ensures that the person pursuing the action has a real interest in the outcome of the controversy"); *Greer*, 122 Ill. 2d at 488, 524 N.E.2d at 572 (the doctrine of standing limits judicial consideration to those controversies that are "truly adversarial").

Under the well-established test for standing, we find that the plaintiffs' claim of injury is distinct and palpable, in that it is based upon the imposition of a particular tax and is not vague or undefined. Their claim of injury is fairly traceable to the defendants' actions, in that it is the school districts that initially requested the tax to be implemented, it is the Williamson County Board that passed the ordinances and completed the procedures that resulted in the implementation of the tax, and it is the Department of Revenue that is charged with the collection and enforcement of the tax. Finally, their claim of injury is "substantially likely to be prevented or redressed by the grant of the relief requested." *Greer*, 122 Ill. 2d at 493, 524 N.E.2d at 575. The plaintiffs have alleged that the tax is unconstitutional and was improperly imposed. They request declaratory and injunctive relief, the ultimate aim of which is to enjoin collection of the tax. If the collection of the tax is enjoined, they will no longer be subject to it.

We emphasize that this decision is limited to the issue of the plaintiffs' standing; we are not making any ruling or comments about the ultimate outcome of the lawsuit. In ruling on the issue of standing, however, we are required to consider the allegations of the plaintiffs' amended complaint as true for the purpose of our decision. *Crusius*, 348 Ill. App. 3d at 48, 807 N.E.2d at 1212. Therefore, if the relief the plaintiffs request is granted, then the injury they claim will have been prevented or redressed, as is required for them to have standing. Thus, they meet the most basic requirements for standing.

The trial court ruled that the plaintiffs do not have standing to bring this action as

taxpayers for the following reason: "[The School Facility Tax Law] specifically allow[s] Plaintiffs to reimburse themselves for their sales tax liability by charging the sales taxes to their customers. In other words, the sales taxes are passed along to Plaintiffs' customers." That reasoning is flawed. The tax imposed is a tax on the occupation of being a retailer, and must be paid by the retailer, whether or not it is passed along to consumers. The Illinois Supreme Court has squarely rejected the trial court's reasoning:

> "Illinois retailers are liable for taxes under the Retailers' Occupation Tax Act [(Ill. Rev. Stat. 1985, ch. 120, par. 440 *et seq.*)] whether they have successfully collected use taxes from their customers or not. Moreover, as we have stated, 'The retailers' occupation tax is levied upon the seller, and the custom of passing the burden to the buyer by means of a price increase does not alter its nature. It is the legal incidence of the tax that controls.' " *Springfield Rare Coin Galleries, Inc. v. Johnson*, 115 Ill. 2d 221, 229, 503 N.E.2d 300, 304 (1986) (quoting *National Bank of Hyde Park in Chicago v. Isaacs*, 27 Ill. 2d 205, 207, 188 N.E.2d 704, 705 (1963)).

In *Springfield Rare Coin Galleries, Inc.*, the Illinois Supreme Court determined that the plaintiff corporation had standing as a taxpayer to challenge the imposition of a provision of the Retailers' Occupation Tax Act. *Springfield Rare Coin Galleries, Inc.*, 115 Ill. 2d at 231, 503 N.E.2d at 304. Similarly, in the case at bar, although P&S and Bowman have the right to pass the tax along to their customers, that right does not defeat their standing to challenge the imposition of the tax because the school facility tax is to be construed the same as the retail sales tax at issue in *Springfield Rare Coin Galleries, Inc.*

The School Facility Tax Law provides that the school facilities tax is to be treated the same as it would be under the Retailers' Occupation Tax Act (35 ILCS 120/1 *et seq.* (West 2006)) by providing as follows:

> "In the administration of and compliance with this subsection, the Department

12

and persons who are subject to this subsection (i) have the same rights, remedies, privileges, immunities, powers, and duties, (ii) are subject to the same conditions, restrictions, limitations, penalties, and definitions of terms, and (iii) shall employ the same modes of procedure as are set forth in [the applicable] Sections *** of the Retailers' Occupation Tax Act and all provisions of the Uniform Penalty and Interest Act as if those provisions were set forth in this subsection." 55 ILCS 5/5-1006.7(a) (West Supp. 2007).

Therefore, since the supreme court has ruled that a corporation has standing to challenge retail sales taxes even though it might have passed that tax along to its customers, the corporate plaintiffs in this case do not lack standing simply because they may pass the school facility tax along to their customers.

The defendants nevertheless argue that the trial court correctly ruled that the plaintiffs do not have standing because they may pass the tax along to their customers, and in support of that argument they cite the Illinois Supreme Court's decision in *Raintree Homes, Inc. v. Village of Long Grove*, 209 Ill. 2d 248, 807 N.E.2d 439 (2004). We disagree. In *Raintree Homes, Inc.*, the supreme court considered whether building permit applicants had standing to challenge the imposition of impact fees, which were required to be paid by each building permit applicant. *Raintree Homes, Inc.*, 209 Ill. 2d at 251-52, 807 N.E.2d at 441-42. The supreme court ruled that the plaintiffs did not have standing to challenge the fees because the landowners, not the plaintiffs/building permit applicants, had actually paid those fees. *Raintree Homes, Inc.*, 209 Ill. 2d at 262, 807 N.E.2d at 447-48.

There are significant differences between the facts of the *Raintree Homes, Inc.* case and ours. There, the plaintiffs had no interest in the controversy because it was undisputed that they had not paid the challenged fees. *Raintree Homes, Inc.*, 209 Ill. 2d at 261-62, 807 N.E.2d at 447-48. In the case at bar, the defendants have argued only that the plaintiffs have

13

a *right* to pass the tax along, not that they have actually done so.

The most important difference, however, is that the nature of impact fees is different from the nature of retail sales taxes. In *Raintree Homes, Inc.*, the supreme court noted that impact fees are not taxes, although there are similarities. *Raintree Homes, Inc.*, 209 Ill. 2d at 259, 807 N.E.2d at 446. Taxes imposed under the Retailers' Occupation Tax Act are not taxes upon the privilege of buying, or upon individual sales, but upon the *occupation* of retailer. See *Central Television Service, Inc. v. Isaacs*, 27 Ill. 2d 420, 426-27, 189 N.E.2d 333, 336 (1963) (and cases cited therein). Likewise, taxes imposed under the School Facility Tax Law are also specifically imposed "upon all persons engaged in the business of selling tangible personal property." 55 ILCS 5/5-1006.7(a) (West Supp. 2007).

In contrast, the impact fees imposed in *Raintree Homes, Inc.* were fees imposed as a condition of the issuance of a particular building permit for the construction of a specific dwelling unit. *Raintree Homes, Inc.*, 209 Ill. 2d at 252, 807 N.E.2d at 442. Since the fees in that case were specific to the transaction, the only parties with a real interest in the controversy were the ones that actually paid the fees. In our case, since the tax is upon the occupation of retailer, it is the retailer that has the real interest in the controversy. Hence, the plaintiffs in our case, which are retailers, are the real parties in interest, and the ruling in *Raintree Homes, Inc.* does not apply to the facts of this case.

The trial court also determined that the plaintiffs did not have standing as tax collectors to challenge this tax because they have the right to be reimbursed for their expenditures in collecting the tax. That reasoning is also faulty. Since the tax is upon the plaintiffs due to their status as retail sellers, it is the imposition of the tax that gives them standing, and any procedures by which they may recover their costs for collecting it do not negate the effect of the tax upon them. Since the supreme court has determined that the ability to directly pass the tax along to one's customers does not defeat standing, it is not

reasonable to find that the ability to recover the incidental cost of the procedures required to collect the tax defeats standing. See *Springfield Rare Coin Galleries, Inc.*, 115 Ill. 2d at 229, 503 N.E.2d at 304.

We next consider the defendants' argument that the plaintiffs do not have standing under section 11-301 because they are not "citizens." 735 ILCS 5/11-301 (West 2008). The plaintiffs assert standing under section 11-301, as well as under common law principles of standing, because, by their amended complaint, they seek to restrain and enjoin the disbursement of public funds collected from retailers in Williamson County. See *City of Carbondale v. Bower*, 332 Ill. App. 3d 928, 932, 773 N.E.2d 182, 185 (2002) (in order to file an action under section 11-301, the plaintiff must be a citizen and taxpayer and the complaint must be an action to restrain and enjoin the disbursement of public funds). The defendants argue that because the plaintiffs "are corporate entities, they do not qualify as citizens who are authorized to bring this type of action." They specifically argued in the trial court and in oral argument before this court that only an individual citizen, and not a corporate entity such as either plaintiff, can ever qualify as a "citizen and taxpayer" under section 11-301. This argument is without merit.

Corporate entities such as these plaintiffs qualify as corporate citizens with rights and responsibilities very similar to those of individual citizens. See *Bird v. Luhr Brothers, Inc.*, 334 Ill. App. 3d 1088, 1090, 779 N.E.2d 907, 911 (2002) (an Illinois corporate defendant in a forum *non conveniens* case was referred to as a "corporate citizen"); *People ex rel. Scott v. Dravo Corp.*, 10 Ill. App. 3d 944, 947, 295 N.E.2d 284, 287 (1973) (in a suit by the State of Illinois against one Illinois corporation and two out-of-state corporations, the court characterized the action as one "between a State and its corporate citizens"); 805 ILCS 5/3.10(b) (West 2008) (each corporation shall have power to sue and be sued, and complain and defend, in its corporate name).

15

The defendants argue that a 1923 Illinois Supreme Court case controls the issue of the standing of the plaintiffs under section 11-301. We disagree. In *Charles Friend & Co. v. Goldsmith & Seidel Co.*, 307 Ill. 45, 48, 138 N.E. 185, 186 (1923), the supreme court considered the dismissal of an attachment suit in which the issue on appeal was "whether a foreign corporation doing business in this State under the license authorized by law is subject to attachment as a non[]resident." As a part of the discussion of that issue, the supreme court noted that a corporate entity may be considered a person but not a citizen. *Charles Friend & Co.*, 307 Ill. at 50, 138 N.E. at 187. However, that discussion in *Charles Friend & Co.* does not apply to the issue of standing under section 11-301. Later cases have limited the scope of the *Charles Friend & Co.* case to the particular statute at issue therein. See *LeBlanc v. G.D. Searle & Co.*, 178 Ill. App. 3d 236, 240, 533 N.E.2d 41, 43 (1988) (the *Charles Friend & Co.* case was only decided "in light of the purpose of [the attachment] statute"). Since the court in *Charles Friend & Co.* did not consider the question presented in our case, whether a corporate entity qualifies as a "citizen" under section 11-301, its ruling is irrelevant to our decision.

We have found nothing in the legislative history of section 11-301 to support the defendants' argument that the use of the term "citizen" precludes corporate entities from filing actions under that section. It is likely that there is no such legislative history because the legislature never questioned whether corporations would be precluded from filing actions under section 11-301. Clearly, there is no rational basis for interpreting the statute to allow an individual taxpayer to file a lawsuit to restrain and enjoin the disbursement of public funds but to preclude a corporate taxpayer from doing so. Consider two retailers located in the same town, selling the same products. One retailer is incorporated and the other is not. Both are equally subject to the payment of retailers' occupation taxes. Under the defendants' analysis, the individual retailer would have standing to challenge a sales tax under section

16

11-301, but the incorporated retailer would not. Such a result defies logic.

We note that the analysis is no different for Bowman than for P&S, even though Bowman is a Missouri corporation. "A foreign corporation, by seeking and obtaining authority to transact business in Illinois[,] does not preclude itself from objecting to the enforcement of statutes which conflict with the Federal or State constitutions ***." *People ex rel. Holland v. Bleigh Construction Co.*, 61 Ill. 2d 258, 260-61, 335 N.E.2d 469, 472 (1975) (where the defendant, a Missouri corporation, sought to challenge the constitutionality of a statute, the supreme court held that the defendant "obviously" had "standing to challenge the validity of the statute upon which the action against it" was based); see also *St. Louis Southwestern Ry. Co. v. Stratton*, 353 Ill. 273, 278, 187 N.E. 498, 500 (1933) (ruling that once a foreign corporation follows the applicable procedures to obtain the right to do business in Illinois, it is equal to and should be classified the same as similar domestic corporations).

Finally, we address the defendants' argument that the plaintiffs waived their constitutional challenge to the School Facility Tax Law "when they failed to provide notice of the challenge to the proper parties."[1] The defendants claim that the plaintiffs were required to serve notice of the lawsuit upon the Illinois Attorney General when they filed this lawsuit. The defendants base their arguments upon Supreme Court Rule 19(a), which provides, in relevant part, as follows:

> "In any cause or proceeding in which the constitutionality *** of a statute *** affecting the public interest is raised, *and to which action or proceeding the State or the political subdivision, agency, or officer affected is not already a party*, the litigant raising the constitutional *** issue shall serve an appropriate notice thereof on the

---

[1]The plaintiffs filed a motion in this court requesting that we strike this issue from the defendants' brief. We deny that motion.

Attorney General, State's Attorney, municipal counsel[,] or agency attorney, as the case may be." (Emphasis added.) 210 Ill. 2d R. 19(a).

The defendants acknowledge that the plaintiffs served a Rule 19(a) notice on June 17, 2008, within a month of the initial filing of their complaint. However, they complain that the notice was not served simultaneously with the initial complaint and that it was served on the Williamson County State's Attorney and the City's corporate counsel, rather than upon the Attorney General's office. They argue that the plaintiffs have therefore waived any challenge to the constitutionality of the tax and "should not be allowed to appeal to this Court." We disagree. Two of the cases the defendants cite in support of this argument are distinguishable. In both cases, the plaintiffs failed to raise the constitutional challenge in the trial court, and the courts found the issues waived on that basis, also noting that the plaintiffs had failed to comply with Rule 19. *Villareal v. Peebles*, 299 Ill. App. 3d 556, 560, 701 N.E.2d 145, 147 (1998); *Witt v. Jones & Jones Law Offices, P.C.*, 269 Ill. App. 3d 540, 545, 646 N.E.2d 23, 26 (1995). Those cases are not applicable to our case, where the plaintiffs squarely raised the constitutional issues in their initial complaint and served a Rule 19 notice upon the State's Attorney and corporate counsel less than one month later.

Moreover, the Department of Revenue, the state agency charged with overseeing and collecting the tax, has been made a party to this lawsuit and has been served with a summons. Under Rule 19, the notice must be served *unless* the State or agency "affected is not already a party." 210 Ill. 2d R. 19(a). Here, the agency affected, the Department of Revenue, has been made a party defendant prior to any resolution on the merits of the constitutional issues raised. "The purpose of the notice is to give the affected agency or officer the opportunity to intervene in the proceeding for the purpose of defending the constitutionality of the statute, ordinance, or administrative regulation." *Village of Lake Villa v. Stokovich*, 211 Ill. 2d 106, 115, 810 N.E.2d 13, 20 (2004). Here, the issue of the constitutionality of the statute has yet

18

to be determined. The purpose of the rule has been accomplished. The defendants' argument fails.

CONCLUSION

For all the reasons stated, we reverse the trial court's order granting the defendants' motion to dismiss, and we remand for further proceedings consistent with this opinion.

Reversed; cause remanded.

GOLDENHERSH, P.J., and CHAPMAN, J., concur.

NO. 5-09-0079

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | | |
|---|---|---|
| P&S GRAIN, LLC, an Illinois Limited Liability Company, and V.W. BOWMAN OIL COMPANY, a Missouri Corporation, | ) ) ) ) | Appeal from the Circuit Court of Williamson County. |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | No. 08-CH-100 |
| THE COUNTY OF WILLIAMSON, ILLINOIS, an Illinois Unit of Local Government, BRIAN A. HAMER, Director, Illinois Department of Revenue, an Agency of State Government, and THE BOARDS OF EDUCATION OF JOHNSTON CITY, MARION, CRAB ORCHARD, HERRIN, and CARTERVILLE SCHOOL DISTRICTS, | ) ) ) ) ) ) ) ) ) ) | |
| | ) ) | Honorable John Speroni, |
| Defendants-Appellees. | ) | Judge, presiding. |

---

**Opinion Filed**: April 2, 2010

---

**Justices**: Honorable Bruce D. Stewart, J.

Honorable Richard P. Goldenhersh, P.J., and
Honorable Melissa A. Chapman, J.,
Concur

---

**Attorney for Appellants**: Ronald E. Osman, Ronald E. Osman & Associates, Ltd., 1602 W. Kimmel, P.O. Box 939, Marion, IL 62959

---

**Attorneys for Appellees**: Merry C. Rhoades, Daniel J. Rhoads, Tueth, Keeney, Cooper, Mohan & Jackstadt, PC, 101 W. Vandalia, Suite 210, Edwardsville, IL 62025 (for The Boards of Education of Johnston City, Marion, Crab Orchard, Herrin, and Carterville School Districts)

Stephen E. Norris, Deputy Director, Sharon Shanahan, Staff Attorney, State's Attorneys Appellate Prosecutor, 730 E. Illinois Highway, Suite 2, P.O. Box 2249, Mt. Vernon, IL 62864 (**NO BRIEF FILED** -- for The County of Williamson, Illinois)